



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN KINSEY,                    :    CIVIL ACTION
           Plaintiff,       :
     v.                         :
                      :
LOUISVILLE LADDER, INC, et al.  :    NO. 10-1864
           Defendant.     :

**FILED**

AUG 19 2011

MICHAEL E. KUNZ, Clerk
By_____ ____Dep. Clerk

### MEMORANDUM

Baylson, J.                                          **August 19, 2011**

## I.    Introduction

This case, alleging negligence and strict products liability, arises out of a workplace

incident during which a ladder manufactured by Defendant Louisville Ladder, Inc.[1] ("Louisville

Ladder") collapsed while Plaintiff John Kinsey ("Plaintiff") was working on it.  Compl. at ¶ 7-8

(ECF No. 1-1).  Presently before the Court is a Motion for Summary Judgment filed by

Defendant on February 4, 2011 (ECF No. 22).

## II.    Facts and Procedural History

### A.    Facts

Plaintiff, a resident of Pennsylvania, brings this action against Louisville Ladder, a

Kentucky corporation.  Plaintiff alleges that, on March 21, 2008, he was standing on a rolling

steel warehouse ladder while in the course and scope of his employment at M&M Warehouse

---

[1] Plaintiff identified Louisville Ladder, Inc.; Louisville; Louisville Ladder Group, LLC; and
Louisville Ladder Corp. in the Complaint. Pl.'s Compl. at ¶¶ 2-5. Defendant has stated in its
Answer and Brief in Support of the Motion for Summary Judgment that the proper corporate
defendant is Louisville Ladder, Inc. See Answer at ¶¶ 2-5; Def.'s Br. at 1 n.1. On December 3,
2010, the parties stipulated to the dismissal from this suit Defendant Fastenal Supply Company
(ECF No. 19).

Supply ("M&M") when the ladder collapsed and caused Plaintiff to sustain severe injuries. Compl. ¶ 8. Plaintiff alleges that his injuries were caused by the negligence, recklessness, failure to warn or adequately warn, and defective product of the Defendant and that the ladder involved in the accident was being put to a foreseeable use. Id. ¶¶ 11-13, 75. According to Plaintiff, as a direct and proximate result of the negligence, recklessness, failure to warn or adequately warn, and defective product of Defendant, Plaintiff suffered, among other things, pneumothorax, injury to left ribs, left leg, neck and back, great pain, embarrassment, and emotional and psychological trauma, as the result of which Plaintiff has sustained lost earnings and the inability to enjoy various pleasures of life that he previously enjoyed. Id. ¶¶ 14-18. Plaintiff seeks to recover damages in excess of $50,000 and in excess of this Court's arbitrational limit based on negligence and strict liability theories. Id. ¶ 18, 68.

### A.   Louisville Ladder Model SW2405

The ladder at issue is a Louisville Ladder Model SW2405 rolling steel warehouse ladder which was manufactured by Defendant in November 1993. Def.'s Statement of Uncontested Facts at ¶ 7. This ladder has five steps; left, right, and rear handrails; and is rated for 300 pounds. Id. at ¶ 9. The ladder also has four spring-loaded swivel casters which allow the operator to roll the ladder freely. Id. at ¶ 10. The ladder's four legs are attached to the U-shaped base assembly with bolts; the swivel casters are also attached to the base assembly. Id. at ¶ 11. When the operator steps onto the ladder, the operator's weight compresses a spring in the swivel casters and engages the four ladder feet with the floor. Id. at ¶ 12. The ladder is designed, manufactured, and sold with rubber crutch tips on the bottom of each of the four ladder feet. Id. at ¶ 13.

-2-

The ladder is provided with warnings and instructions to ensure its safe use, including the following:

- Failure to read and follow instructions on the use of this product could result in serious personal injury or death.

- Inspect thoroughly for missing or damaged components.  Never use a damaged ladder and never make temporary repairs.

- Make sure all working parts are in good working order.  Make sure locking device functions properly and all casters operate freely.

- Destroy ladder if damaged, worn, or deteriorated in any way,

- Never drop or apply an impact load to ladder.

Id. at ¶ 14.

### B.   Ladder Condition

It is the belief of Plaintiff's employer that the ladder was purchased new.  Id. at ¶ 16.

Prior to the accident, the ladder was damaged on numerous occasions, including cracks and

breaks in the structural steel due to the ladder being struck by forklifts or pallet jacks.  Id. at ¶¶

17.  Plaintiff's employer had made several repairs prior to the accident, including grinding and

welding the left rear leg.  Id. at ¶¶ 17-18.  After these repairs, M&M painted the repaired areas a

similar shade of blue as the original color of the ladder.  Id. at ¶ 19.  M&M's ladders were subject

to quarterly inspection.  Id.  Upon the last inspection prior to the accident on conducted

December 5, 2007, the M&M maintenance coordinator, John Raymond Bettcher, noted that one

of its legs was "slightly bent" with "no visible cracks" but cannot now specify to which leg he

was referring.  Id.  Mr. Bettcher testified that the damage to the front leg of the ladder must have

occurred sometime between his inspection and March 21, 2008 because that damage "was major and would have caused him to remove the ladder from service." Id. at ¶ 47.

### C.   Plaintiff's Expert Report

Following an examination of the ladder on November 10, 2011, Plaintiff's expert, Craig Clauser reported that the left, rear[2] vertical "tube" or leg of the ladder was "bent and broken" due to a failure "at a bolt hole in the steel tube." Expert Report, p. 2 (ECF No. 24-3); see also December 10, 2010 Clauser Deposition at 120-21.   Mr. Clauser also reported that the right, rear vertical leg and the horizontal tube to which the vertical was attached "showed evidence of weld repair, grinding, and repainting[.]" Id.

Mr. Clauser determined that the failure of the vertical leg occurred as a result of a strike to the leg's connection point to the horizontal tube. Id. at 3.   Mr. Clauser stated in his report that "ladders for warehouse use should be reasonabl[y] tough and durable" and it would be "reasonable to assume that rolling ladders being pushed around warehouses will bump into things at floor level." The Model SW2405 ladder was "sold as a 'rolling warehouse ladder.'"

Mr. Clauser opined that the ladder collapsed because of an inherent weak point in the ladder design that was susceptible to damage and failure in warehouse use. Id. at 4.   Specifically, Mr. Clauser concluded that the six inches of vertical leg extending below the attachment to the

---

[2] In his expert report, Mr. Clauser refers to the "left, front vertical member" has having failed when Plaintiff applied his weight to the ladder, causing the accident. Expert Report at 3. At Mr. Clauser's deposition, Mr. Clauser engaged in discussion with Defendant's counsel about which side of the ladder was the front – the side facing the steps or the side opposite. Clauser Dep. at 75-76. For some reason, Defendant's counsel requested that Mr. Clauser agree for the purpose of the deposition that "front" was the side facing the ladder steps, opposite from the manner by which Mr. Clauser had defined "front" in his expert report. Id. at 76. To be consistent with Mr. Clauser's deposition testimony, the Court will refer to the damage to the failure of the left, rear leg.

horizontal tube had "potential for high bending stress in the tube." Id. at 3. Mr. Clauser concluded that the hole drilled through the vertical leg created a point of weakness at the "same location as maximum bending stress" on the leg. Id. Furthermore, Mr. Clauser determined that the damaged condition of a leg could be masked while the ladder is supported by the casters, only to be revealed when an operated places weight on the ladder. Id. Mr. Clauser opined that Defendant did not provide the ladder "with every element necessary to make it safe for use in the [M&M warehouse]" and in fact, provided the ladder "with a condition that made it unsafe for this use." Id.

Finally, Mr. Clauser stated in his report that the Defendant's cantilevered ladder leg design used for ladders with six or more steps could have been used for the five-step ladder and would have eliminated the inherent weak point in the ladder's design. Id. Thus, Mr. Clauser concluded that alternative designs were available to Defendant to address or eliminate the subject deficiencies. Id. This design was being used at the time of the ladder's manufacture in 1993. Id.

Testifying in his deposition, Mr. Clauser elaborated on the damage and repairs to the ladder, stating that

- the front right and rear left casters were deformed prior to Plaintiff's accident. Id. at 89, 103.

- a weld had been made to the upper surface of the base assembly connection to the rear right leg, which had been painted blue. Id. at 90-91.

- the left front leg of the ladder was "displaced from its normal position" such that it "no longer lays flat on the ground." Id. at 94-95.

- the left rear leg had fractured prior to Plaintiff's accident and a weld was made at the connection with the base assembly. Id. at 99.

- the bolt attaching the left rear leg was bent and other bolts had been

-5-

replaced. Id. at 104-05, 107-09.

Mr. Clauser testified that the section of the leg that failed at the bolt hole had been previously welded and that, at the time of Plaintiff's accident, the repair failed "in part." Clauser Dep. at 121.

Mr. Clauser stated that he had not evaluated the strength of the welds made to the ladder to assess whether or not they had restored the steel to its original strength and admitted that certain repairs had not restored the ladder to its original geometry "locally." Id. at 86. Mr. Clauser further testified that at the time of his inspection, three crutch tips were missing off of the vertical legs, possibly affecting its stability with marks indicating that the ladder had been used for some time without the crutch tips. Id. at 88, 119.

Mr. Clauser stated that the damage to the ladder was the result of being "subjected to an impact . . . or a series of loading applications" and that certain damage would have required significant force of hundreds of pounds. Id. at 83, 84, 105-06, 119. Mr. Clauser clarified that the damage to the rear left leg was likely the result of multiple impacts. Id. at 100. Mr. Clauser testified that, with normal climbing, the horizontal force applied to the ladder was only about 10 to 20 percent of the weight of the operator. Id. at 118. Mr. Clauser stated that a horizontal force of 300 pounds would not be an "intended use, but a foreseeable event in certain conditions." Id. at 119.

Mr. Clauser testified that, at the time of the accident, Plaintiff climbed the ladder and the left rear leg "just folded out from under and allowed the left rear corner to start going down." Id. at 143. Plaintiff did not inspect carefully for damage prior to use and a careful inspection would have revealed damage to the left rear leg. Clauser Dep. at 81, 142. Noting that a December 2007

-6-

inspection by Mr. Betcher found one foot bent, Mr. Clauser testified that it would have been "prudent" for M&M to have taken the ladder out of commission at that time.  Id. at 135.

### B.     Procedural History

Based on the above events, Plaintiff filed his action in the Court of Common Pleas of Philadelphia County, Pennsylvania, on March 19, 2010.  The Complaint included Counts I-VI for Negligence, and Counts VII-X for Products Liability under Restatement (Second) Torts § 402(a) and Pennsylvania interpretive common law.

Louisville Ladder removed the case to the Eastern District of Pennsylvania on April 26, 2010 (ECF No. 1).  Defendant filed a Motion for Summary Judgment on February 4, 2011 (ECF No. 22).  Plaintiff filed a response on March 4, 2011 (ECF No. 24), but Plaintiff's response to Defendant's statement of uncontested facts contained no specific record cites.  As a result, this Court requested an amended version (ECF No. 25), which Plaintiff filed on April 6, 2011 (ECF No. 26).

### III.    Legal Standards

#### A.     Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The Court is sitting in diversity and therefore must apply the substantive law of  Pennsylvania. See Pavlike v. Lane Ltd./Tobacco Exporters Intern., 135 F.3d 876, 1881 (3d Cir. 1998).

### A. Summary Judgment

Summary judgment is appropriate if the movant can show "that there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).[1]  A dispute is "genuine" if the evidence is such that a reasonable jury could

return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986). A factual dispute is "material" if it might affect the outcome of the case under governing

law. Id.

Where the non-moving party bears the burden of proof on a particular issue at trial, the

moving party's initial burden can be met simply by "pointing out to the district court . . . that

there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986). Summary judgment is appropriate if the non-moving party fails to

rebut by making a factual showing "sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477

U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the

light most favorable to the opposing party. Anderson, 477 U.S. at 255.

### IV.    Parties' Contentions

---

[1]      Amendments to the Federal Rules Of Civil Procedure became effective on December 1, 2010. The oft-cited summary judgment standard formerly found in Rule 56© is now located in Rule 56(a), with one alteration: the substitution of the word "dispute" for "issue," which the Rules Advisory Committee explained better describes the summary judgment inquiry, but does not affect the substantive standard or the applicability of prior decisions construing the standard. Fed. R. Civ. P. 56(a); Fed. R. Civ. P. 56 Advisory Committee's Note.

Pursuant to 28 U.S.C. § 2074(a) and the April 28, 2010 Supreme Court order, the amended rule governs all proceedings commenced on or after December 1, 2010, and all proceedings then pending, "insofar as just and practicable." United States Courts, Rules and Procedures, Rules and Forms Amendments Effective 12/1/10 (Jan. 11, 2011, 1:36 PM), http://www.uscourts.gov/RulesAndPolicies/FederalRulemaking/Overview/RulesForms120110. aspx. Thus, when necessary, the Court quotes to the amended rule.

Defendant contends that summary judgment must be entered in its favor because M&M's repairs to the ladder prior to Plaintiff's accident constituted a substantial and destructive modification of the ladder and were the superceding cause of the ladder's collapse. Def.'s Br. in Support of Mot. for Summ. J. at 14-16. Defendant avers that M&M compounded the risk created by the repairs by painting its work blue so that employees who inspected or used the ladder did not notice the repairs and check if they were effective. Id. at 16. Further, Defendant contends that Plaintiff did not comply with manufacturer warnings to destroy any ladder if it became damaged, worn, or deteriorated in any way. Id. Instead, Plaintiff continued to use the ladder when several of the steel structural members of the ladder were cracked and deformed and three of the crutch tips on the ladder legs were missing as of the date of the accident, March 21, 2008. Id. at 16-17. In response to Plaintiff's claim of negligence, Defendant contends that it owed no duty of care to Plaintiff because the harm incurred was not foreseeable. Defendant avers the ladder was subjected to abuse and alteration prior to the accident and there is no public interest in finding a duty to design any product so that it can withstand any theoretical abuse or force. Id. at 18-19.

Plaintiff argues the repairs to the ladder were necessary to address the structural deficiencies in the ladder present from the date of manufacture. Pl.'s Resp. to Mot. for Summ. J. at ¶ 11. Further, Plaintiff asserts that there are genuine issues of material fact regarding the reasons why the ladder required repair that preclude a grant of summary judgment. Id. at ¶ 12. In support of the negligence claim, Plaintiff argues that Defendant had a duty to Plaintiff to manufacture a structurally sound product. Id. at ¶ 13.

## V.   Analysis

In Webb v. Zern, 220 A.2d 853, 854 (Pa. 1966), the Pennsylvania Supreme Court adopted

section 402A of the Restatement (Second) of Torts as the law of strict products liability in

Pennsylvania.   That Court subsequently established that section 402A "imposes strict liability in

tort not only for injuries caused by the defective manufacture of products, but also for injuries

caused by defects in their design." Id. (citing Lewis v. Coffing Hoist Div., Duff-Norton Co., 528

A.2d 590, 592 (Pa. 1987) (internal citations omitted)).

To recover under Section 402A, a plaintiff must present evidence that (1) a product is

defective, (2) the defect proximately caused the injury, and (3) that the defect existed at the time

the product left the manufacturer's control. Id. A product is defective if it "left the supplier's

control lacking any element necessary to make it safe for its intended use or possessing any

feature that renders it unsafe for the intended use." Habecker v. Clark Equip. Co., 36 F.3d 278,

282 (3d Cir. 1994) (quoting Azzarello v. Black Bros. Co., 391 A.3d 1020, 1027 (Pa. 1978)). The

"intended use of a product 'includes all those [uses] which are reasonably foreseeable to the

seller.'" Pacheco v. Coats Co., 26 F.3d 418, 422 (3d Cir. 1994) (quoting Sheldon v. West Bend

Equip. Corp., 718 F. 2d 603, 608 (3d Cir. 1983).

### A.   Substantial Modification

Under Pennsylvania law, "a manufacturer or seller is not liable for injuries caused by a

defective product if the defect was created by a substantial alteration in the product amounting to

a supervening or intervening cause of the plaintiff's injuries." Davis v. Berwind Corp., 640 A.2d

1289, 1297 (Pa. Super. Ct. 1994). Pennsylvania courts have held that a "material change" to a

product after it leaves the manufacturer's control will break the chain of causation if "the plaintiff

-10-

would not have been injured had the product remained in its unaltered state." Fisher v. Walsh

Parts & Serv. Co., 296 F. Supp. 2d 551, 563 (E.D. Pa. 2003) (Smith, Magistrate J.) (citing Davis,

640 A.2d at 1297). A manufacturer may be relieved of liability if "(1) the product was

substantially altered after it left the manufacturer's control; (2) the modifications were not

foreseeable to the manufacturer; and (3) the changes to the product were a superseding cause of

the user's injury." Fisher v. Walsh Parts & Serv. Co., 277 F. Supp. 2d 496, 501 (E.D. Pa. 2003)

(Smith, Magistrate J.) (citing Hoffman v. Niagra Machine & Tool Works Co., 683 F. Supp. 489,

493 (E.D. Pa. 1988)). Thus, a manufacturer will not be liable where a safe product is made

unsafe by subsequent and unforeseeable changes. Id. (citing Berkebile v. Brantly Helicopter

Corp., 337 A.2d 893 (Pa. 1975)).

It is undisputed that prior to Plaintiff's accident, the ladder had been subjected to single or

multiple applications of significant horizontal force. See Def.'s Statement of Uncontested Facts

at ¶¶ 17-19; Clauser Dep. at 89, 90-1, 94-95, 99, 103-05, 107-09. This force caused significant

damage to the ladder's legs and casters that M&M undertook to repair through grinding and

welding, including of the left rear leg, which ultimately failed during Plaintiff's accident.

Clauser Dep. at 104-05, 107-09, 143.

"Where the product has reached the user or consumer with substantial changes, the

question becomes whether the manufacturer could have reasonably expected or foreseen such an

alteration of its product." Davis, 640 A.2d at 1297 (citing Bascelli v. Randy, Inc., 488 A.2d 1110

(1985)). Pennsylvania courts have clarified that foreseeability is a question for the factfinder

"unless the inferences are so clear that a court can say as a matter of law that a reasonable

manufacturer could not have foreseen such a change." Id. (citing D'Antona v. Hampton

-11-

Grinding Wheel Co., 310 A.2d 307, 310 (1973). In Davis, the Pennsylvania Superior Court overturned a jury's decision that removal of an "interlocking safety device" on a meat blender was foreseeable, requiring additional warnings. Id. at 361. The Superior Court determined that the safety interlock was "integral" to the product as stated in the product manual "even though the product was operational without the safety device." Id. at 362. That court held that the decision to remove the safety interlock constituted a "substantial change in the condition in which the [blender] was sold" that occurred against the warnings of the manufacturer, rising to the level of an intervening or superceding cause of the plaintiff's injury and breaking the chain of causation. Id. at 363 (citing a series of cases in many of which safety devices were removed, proximately causing injury); see also Battiato v. Harley-Davidson Motor Co., No. 08-1786, 2010 WL 2595953 at *5-6 (M.D. Pa. June 24, 2010) (Munley, J.) (stating that courts have applied the "substantial alteration" rule to "circumstances where a plaintiff acted to change the way a device operated or to remove safety controls" and distinguishing the occurrence of a bent locking pin as the "result of a design flaw that exposed the pin and made it susceptible to bending") (emphasis added).

Relying on Fisher, 296 F. Supp. 2d at 551, Defendant contends that the repairs conducted by M&M were a superseding cause of the accident that precludes strict liability. Fisher addressed a products liability claim by a plaintiff who lost part of her hand during an accident sustained while operating a mechanical press. Id. at 554. In ultimately ruling for the defendant manufacturer in a bench trial, Judge Smith determined that the owners of the machine had made a series of repairs to the tool without contacting the manufacturer for replacement parts, both by fabricating new parts and by obtaining a rebuild kit from a third party. Id. at 556. Judge Smith

found that the "anti-repeat device" on the press was safe as designed through the use of two hex

bolts secured with lock washers and safety wiring to prevent the bolts from loosening. Id. at 564.

Judge Smith concluded that the press had been altered to remove both the hex bolts and the

safety wiring, likely as the result of repairs, constituting a substantial alteration. Id. Upon

considering the testimony of two experts, Judge Smith credited the testimony of defendant's

expert and found that the removal of the safety features was "not a foreseeable occurrence."

Judge Smith further found that the alternative designs suggested by the plaintiff's expert were

"both infeasible and impractical." Id.

Notably, the opinion issued by Judge Smith in Fisher and relied upon by Defendants was

the result of a bench trial. In an earlier opinion denying summary judgment, Judge Smith

considered the issue of "whether repairs requiring removal of the safety wire and bolts were

foreseeable at the time the press was sold" and found that issue to remain in dispute. Fisher v.

Walsh Parts & Service Co., 277 F. Supp. 2d 496, 502 (E.D. Pa. 2003); see also Makadji v. GPI

Division of Harmony Enterprises, Inc., No. 05-3044, 2006 WL 3498324 (E.D. Pa. Dec. 1, 2006)

(Schiller, J.) (holding that the issue of whether a machine defect "was the result of wear and tear

or misuse" was a factual question "solely within the province of the jury"). This Court finds the

issue of foreseeability similarly in dispute in this case.

Mr. Clauser testified that the horizontal impact to the ladder, while not the intended use,

was foreseeable. Mr. Clauser offered the opinion in his expert report that the design of the ladder

by which six inches of vertical leg extends below its attachment to the horizontal tub created

"potential for high bending stress in the tube" at the same place that the bolt hole created a point

of weakness, creating a ladder unsafe for use, despite an available alternative design. Expert

-13-

Report at 3. Mr. Clauser testified that the ladder failed at the bolt hole. Defendant contends that

the fifteen years of damage to the ladder were unforeseeable alterations and abuse, which caused

Plaintiff's accident. Defendant further contends that M&M failed to comply with warnings to

destroy a ladder that is damaged, worn, or deteriorated and, instead, conducted repairs that

weakened the ladder's steel and masked those repairs with blue paint.

 Mr. Clauser testified that the warnings on the ladder were sufficient and that it would

have been "prudent" for M&M to take the ladder out of commission after the December 2007

inspection, but did not testify that the failure to do so was an unforeseeable event. Further, the

warnings cited by Defendant advise users never to "make <u>temporary</u> repairs," indicating that

permanent repairs were within the contemplation of the manufacturer. <u>See</u> Def.'s Statement of

Uncontested Facts at ¶ 14 (emphasis added). Finally, the record lacks any clear evidence as to

the useful life of the ladder. In light of Mr. Clauser's testimony, this Court cannot, as a matter of

law, conclude that "the inferences are so clear" that Defendant could not have foreseen the

damage, M&M's failure to remove the ladder from use, or the subsequent repairs to the ladder's

legs. <u>Davis</u>, 640 A.2d at 1296. Thus, Defendant's motion for summary judgment as to

Plaintiff's strict liability claim is denied.

 **B.** **Duty of Care**

 In response to Plaintiff's claim of negligence, Defendant additionally contends that it

owed no duty of care to Plaintiff because the harm incurred was not foreseeable. The Court

cannot find the harm unforeseeable as a matter of law and concludes that the issue of

foreseeability is appropriately directed towards the factfinder. Defendant's motion for summary

judgment as to Plaintiff's negligence claim will also be denied.

-14-

## VI.   Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is denied.


O:\CIVIL 09-10\10-1864 Kinsey v. Louisville Ladder\Kinsey v. Louisville Ladder, Inc. 10-1864 MSJ

MEMORANDUM.wpd